Saffold *vs.* Keenan.

No. 51.—SEABORN J. SAFFOLD, plaintiff in error *vs.* CHRISTOPHER KEENAN, defendant in error.

[1.] An application to amend a judgment is an appeal to the discretionary power of the court.

[2.] The discretion of the Circuit Courts will not be controlled by this court, in refusing motions to amend judgments after fourteen years acquiescence, especially where the proposed alteration would fix the defendant with a heavy liability; and where too, the error complained of is not one which facilitates the record, but the objection is, that the judgment rendered, is not so beneficial to the plaintiff as it might have been made.

Motion to amend judgment.   In Morgan Superior Court.   Judge MERRIWETHER presiding.   March Term, 1847.   Motion to amend overruled and error assigned thereon.

For the facts and grounds of error, the reader is referred to the opinion of the Supreme Court.

FOSTER for the plaintiff in error.

Judge CONE and JAMES H. McHENRY, for the defendant in error, made the following points:

Amendments are either at common law or by statute.   1 *Tidd Prac.* 697; 1 *Str. R.* 137.

Amendments at common law, are while the proceedings are in "paper" or "roll," and must be made while the proceedings are *in fieri*, and before record.   1 *Tidd Prac.* 697, 711; 2 *Tidd Prac.* 942; 1 *Salk. R.* 47; 3 *Salk. R.* 31; 1 *Bacon Abr.* 145; *Paine R.* 486.

The statute of amendments relates only to proceedings of record. 1 *Tidd Prac.* 697, 711, 712.

The amendment sought and refused by the Court below is a

statutory amendment, and in the discretion of the court. 8 *Henry VI. c.* 12 ; 5 *Taunt R.* 554 ; 10 *S. & R.* 357 ; *The U. S.* vs. *Buford*, 3 *Peters R.* 12 ; 6 *Cranch R.* 217 ; 6 *S. & R.* 510 ; 1 *Kelly R.* 467.

The judgment entered in this case upon the award was properly entered, and the only judgment that could be legally entered. 13 *John. R.* 27 ; 1 *Hen. & Munf. R.* 67 ; 1 *Rand. R.* 449 ; 4 *Dall. R.* 285 ; 5 *Wheat. R.* 294 ; 3 *Cowen R.* 70.

After a great lapse of time, and where the judgment has been performed, no amendment will be allowed. 4 *Ham. R.* 45 ; 3 *Ib.* 486 ; 1 *Hen. & Munf. R.* 25 ; 2 *Va. Cases,* 527 ; 1 *Fairfield R.* 278 ; 1 *Dev. & Bat. R.* 374 ; 5 *Watts R.* 176 ; 3 *Cowen R.* 50 ; 2 *Tuck. Comm.* 313, 314 ; *Tidd Prac.* 435 ; 1 *East R.* 77 ; 1 *Hill R.* 209 ; 2 *Hill R.* 447 ; 1 *Kelly R.* 466.

*By the Court*—LUMPKIN, J. delivering the opinion.

The plaintiff in error, in the year 1832, levied two mortgage *fi. fas.* upon personal property, and was proceeding to sell, when Keenan, the mortgagor, filed his bill in equity in Morgan Superior Court, alleging that he had equitable sets-off to the amount of the mortgages, and praying, among other things, that the executions might be enjoined until the final hearing of the bill. At March Term, 1833, of Morgan Court, the matters in controversy between the parties were referred, under the following order :

" *Ordered,* That the whole matter in controversy between the parties, including the cases pending in the Inferior Court of this county, be referred to the arbitrament and award of Isaac R. Walton, John Robson, and Isaac Walker; and should there be any amount allowed Christopher Keenan, it shall be credited on the *fi. fas.* which have been enjoined.

" *It is further ordered,* That the injunction be now dissolved, and that the sheriff proceed to sell the mortgaged property. The said arbitrators shall make up their award within sixty days from the adjournment of this Court, and deliver the same to the clerk, who shall hand a certified copy to the sheriff; and if their award be in favour of Keenan, the amount found shall be credited by the sheriff on the executions in his hands, the residue to be collected by him. The referees are to select their own day and place of sitting, giving the parties, or their attorneys, ten days notice thereof."

The following award was duly made and returned by the arbitrators:

"In accordance with a rule of reference to us directed from the honourable Superior Court of said County, at March Term, 1833, we have proceeded to the investigation of the matters in dispute between the parties, and do unanimously award and decree that the two mortgage *fi. fas.*, issuing from the Inferior Court of said County, in favour of said Saffold *vs.* Keenan, do proceed against the said Keenan; and we do further award and decree to the said Seaborn J. Saffold all the amounts which may be due the late firm of Saffold & Keenan, by note, book account, or otherwise, and one hundred and thirty-nine dollars and seventy-nine cents, an amount due by said Keenan to said Saffold; which amount we award and decree to be entered up against the said Keenan, on the bill in equity, and costs of suit. And we further award and decree, that the cases of C. Keenan *vs.* S. J. Saffold, in the Inferior Court, be dismissed at said Keenan's cost."

The sheriff sold the mortgaged property, which failed to bring enough to satisfy the *fi. fas.*

The award made and returned by the arbitrators, was at the following term of Morgan Superior Court, (September, 1833,) made the judgment of the court, and an execution was adjudged to be issued against the principal and his security on the injunction bond: accordingly an execution was issued for the balance of one hundred and thirty-nine dollars and seventy-nine cents, found to be owing from Keenan to Saffold, and the amount collected.

In 1843, Saffold brought suit against Eleazer Lockwood, the security on the injunction bond, for the *eventual condemnation money*, claiming the difference between the amount of the two mortgage executions and the sum for which the property sold. Judge Merriwether who presided on the trial of the case, permitted the award and judgment, together with the mortgage *fi. fas.* to go to the jury as evidence of the amount of *condemnation money*. To the introduction of this testimony the counsel of Lockwood objected, and being overruled the decision was excepted to, and upon argument had before this Court, the judgment below was reversed and a new trial ordered. 1 *Kelly R.* 72.

At the last term of Morgan Superior Court, application was made by the attorneys of Saffold to amend the previous judgment upon the award, by inserting therein as *condemnation money*, the sums respectively due upon the two mortgage *fi. fas.*; which mo-

tion being denied, the refusal of Judge Merriwether to permit this amendment, is assigned for error in the writ before us.

[1.] Great latitude is allowed by courts in amending their judicial proceedings. *Davis* vs. *Barker*, 1 *Kelly R.* 559. And this proposition is abundantly sanctioned and sustained by the authorities cited in that case. And while it is true, that the mere mistake of an officer is never without remedy, and the forms of the courts are always best used when they are made to promote the great ends of justice, still it must be apparent, not only that a *mistake* has actually been committed, but even then the courts in amending their records, will so shape their orders as not to work injustice to others. 1 *Kelly R.* 563.

Was there any *mistake* made in entering up the first judgment in this case? We think not; on the contrary, the judgment was in exact conformity with the rule of reference, and in terms of the award; the amounts respectively due upon the mortgages had been ascertained by judgments of foreclosure; and in submitting the matters in controversy between the parties to arbitrators, this indebtedness, as thus established, was not only distinctly recognised, but, by the interlocutory decree withdrawn from under the injunction and ordered to be collected; and the only jurisdiction delegated to the referees over these *fi. fas.* was, to have them credited in the manner specified in the rule of reference, with any amount which they might find coming from Saffold to Keenan. They find that nothing was due; on the other hand, they awarded to Saffold, against Keenan, one hundred and thirty-nine dollars and seventy-nine cents, upon general settlement, and for which they directed a decree to be entered up under the bill, together with the costs of suit. They went further, and decided that the cases in the Inferior Court, at the instance of Keenan against Saffold, should be dismissed at plaintiff's cost. True they award that the mortgage *fi. fas.* shall proceed; this was an act of supererogation; in doing so the arbitrators performed what was not only not required of them, but what had already been done by the chancellor; and that, too, by the consent and agreement of all concerned in the rule of reference. He ordered the executions expressly to proceed, giving to the arbitrators no other control except to credit them with any balance which they might ascertain to be coming from Saffold to Keenan; and the date of the arbitration was fixed within the interval which transpired between the dissolution of the injunction and the day of sale, in order that the de-

Saffold *vs.* Keenan.

fendant might get the benefit of the award, provided it should be in his favour. In the mean time no delay was interposed to the admitted rights of the plaintiff; the process of the law was steadily advancing, and needed not the award of the arbitrators to impart to it motion and progression. And this view alone is conclusive that it was never understood or intended that the mortgage *fi. fas.* should be merged in the judgment of condemnation under the bill, as is now sought to be done by the amendment. The vitality and energy of these precepts were wholly unimpaired by that judgment, and the executions were as good and subsisting *after* as *before* its rendition ; otherwise they never could have proceeded to sell the mortgaged property. This whole proceeding was illegal and void, if they were included in the award. The award virtually determined, there was no credit to be entered on these *fi. fas.* and nothing more; and taken in connexion with the interlocutory decree in the rule of reference, is final and conclusive as to the rights of the parties respecting their indebtedness to each other, and would I apprehend, be a full and complete bar to all further litigation between them.

And the only sum for which the judgment could have been signed, was that for which it was taken. And the defendant's Solicitor evinced a proper appreciation of the rights of his client in the premises, in disregarding so much of the award as directed the *fi. fas.* to go on, and in entering up his decree for the one hundred and thirty-nine dollars and seventy-nine cents, the balance due upon examination, from Keenan to Saffold in addition to the mortgage executions.

Here then is no mistake, clerical or otherwise, capable of being rectified, as would have been the case had one hundred and twenty dollars or some other sum been substituted through inadvertence for that found by the arbitrators. The judgment therefore, proposed to be altered, is the identical one not only demanded by the pleadings, but that which was in the mind of the Court and of counsel at the time. That offered is altogether new, and designed to meet an unforeseen contingency which has arisen in the course of the altercations between the parties, and which, if granted, would flatly contradict the previous proceedings had under the mortgage *fi. fas.* No tribunal is competent to do this, even had the application been made at a proper time. Courts may correct erroneous judgments; they cannot allow wholly different ones to correspond to the several phases which litigation assumes or presents in a

44

course of judicial administration.   A judgment rendered in 1833, and acquiesced in ever since, and long since fully executed, cannot be remodeled in 1847, in order to conform to the opinion of this or any other tribunal, as to what constitutes the evidence of eventual condemnation money in an action on an injunction bond.

[2.] If this motion would have been objectionable for the reasons already assigned if made at any time, what excuse shall be given for the delay of fourteen years which have elapsed since the alleged mistake occurred?   In this period a judgment would be doubly barred under our dormant judgment act; and the right to maintain ejectment for lands, twice tolled or taken away, although the unquestionable title should be in the plaintiff.   Must there be no limit to motions to amend judicial proceedings?

In *Evans* vs. *Rogers,* 1 *Kelly R.* 466, it is pretty strongly intimated that the ear of this Court would be stopped after five years, to similar complaints.   Here the tardiness is trebled, the fault three-fold.

In *Burroughs* vs. *Stevens and others,* 5 *Taunt.* 554, both *Chief Justice Gibbs* and *Justice Heath* put their refusal to permit the judgment to be amended, upon the great length of time which had intervened since its rendition.

It is not pretended that there is any positive rule of law upon this subject, and therefore much, nay every thing, must be left to the sound discretion of the Court.   That there may be an end of litigation, however, it is important, undoubtedly, that these applications be made within a reasonable time.   At this distant day, who shall undertake to say what was in the mind of the very able judge who awarded this judgment? or that it was not done upon the most mature reflection, when the whole transaction was fresh and the circumstances of the case spread out before him?

In the State of New York it has been decided, that after a lapse of twenty years no judicial proceedings whatever ought to be set aside for irregularity.   7 *John.* 556.   And in a later case, of *Soulden & Smith* vs. *Cook,* 4 *Wend.* 217, the Supreme Court of that State held, that after a lapse of *ten years* a judgment will not be set aside for irregularity, or on the merits, where there is no complaint of fraud or circumvention.   And *Mr. Justice Sutherland,* in delivering the opinion of the court, says: "that to do so would be an extraordinary and unprecedented exercise of the powers of the court." He adds, "it may be injurious to the party that he cannot be relieved, but the blame rests upon himself.   There must be some

limitations to applications of this nature, and the length of time which has elapsed must estop the party. For the most manifest error apparent on the record, the defendant could not be relieved by writ of error, the time for bringing such writ having expired; and if for error apparent on the record he is remediless, he cannot expect to have a judgment set aside for a less cogent cause."

In *Surtell* vs. *Brailsford*, 2 *Bay R.* 338, the Constitutional Court of South Carolina say, " it would be a most dangerous thing to set aside a judgment and proceedings *twelve years* after final judgment was signed and entered up; there would be no end to applications of this sort if once a precedent was established for that purpose."

These decisions of the courts of other States, with others which might be adduced, establish, it is true, that there is no uniformity of practice upon this point; from the nature of the case none could be expected; still they are entitled to much consideration, and will, I trust, like all others coming from any quarter of the confederacy, be always treated with respect by this Court. They show with what caution a door will be opened and a precedent made of unravelling and setting aside judgments, after such a length of time, for errors and mistakes which ought to have been corrected immediately after the time when the proceedings were filed.

The statutes of jeofails, made to secure verdicts and judgments, stand opposed to these motions. And judges should lend them an unwilling ear, as not only tending to render all judgments insecure and uncertain, but, as suggested by counsel in the argument of one of the cases cited, their time would be wholly occupied in revising and examining old judgments.

And besides, the question now to be considered is, not whether this Court under similar circumstances would have done as was done by the Circuit Court; (we are free to admit that we would) the question is, whether that Court, in the exercise of its discretionary power upon this subject, has manifestly and flagrantly violated any principle of law? We do not perceive that it has. We maintain that it has not.

After all, the judgment as it now stands, is not erroneous, conceding all that is claimed, but only less beneficial to the party than that which he contends, he might have had. The case too of *Short* vs. *Coffin*, 5 *Burr. R.* 2730, shows that the rule is different where the application is to discharge and where it is to charge the party. Much more latitude is allowed in the former than in the latter case.

What, I ask, would be the effect of the proposed amendment? to bind Keenan and his security in a suit upon the injunction bond, for the remainder due upon the mortgage *fi. fas;* to exclude all defence as to the real injury sustained by Saffold on account of the injunction. Now the actual damage may have been nothing, or very inconsiderable; would it not be doing gross injustice to Keenan and Lockwood so to mould these proceedings as to compel them to submit to a recovery of some three thousand dollars, the difference between the amount of the *fi. fas.* and the sum for which the mortgaged property sold? Such an interpretation of the law would be productive of results which I am free to confess, do not accord with my notions of right and equity.

In any view therefore which we can take of this matter, the judgment of the Court below must be affirmed.